IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MICHAEL PETERS and LINDA PETERS,<br><br>      Plaintiffs,<br><br>  vs.<br><br>LEXINGTON INSURANCE COMPANY, a foreign insurance corporation, and YORK RISK SERVICES GROUP, INC., a foreign corporation qualified to conduct business in Hawaii,<br><br>      Defendants.<br>_____<br><br>JERRY CHERNIK and KRIS CHERNIK<br><br>      Plaintiffs,<br><br>  vs.<br><br>LEXINGTON INSURANCE COMPANY, a foreign insurance corporation, and YORK RISK SERVICES GROUP, INC., a foreign corporation qualified to conduct business in Hawaii,<br><br>      Defendants.<br>_____ | CIVIL NO. 11-00355 SOM/RLP<br>CIVIL NO. 11-00356 SOM/RLP<br>(Consolidated)<br><br>ORDER GRANTING DEFENDANT LEXINGTON INSURANCE COMPANY'S MOTION FOR JUDGMENT ON THE PLEADINGS |

ORDER GRANTING DEFENDANT LEXINGTON
INSURANCE COMPANY'S MOTION FOR JUDGMENT ON THE PLEADINGS

I.        INTRODUCTION.

       This is an action involving insurance coverage arising out of damage to the plaintiffs' condominiums, allegedly caused

by a water leak from another unit.  Plaintiffs Michael Peters, Linda Peters, Jerry Chernik, and Kris Chernik own two condominium units at the Wavecrest Resort on the island of Molokai.  Michael and Linda Peters, and Jerry and Kris Chernik, brought separate actions through virtually identical complaints against Defendants Lexington Insurance Company ("Lexington"), the insurer for the Wavecrest Resort's homeowners' association, and York Risk Services Group, Inc. ("York"), an insurance adjuster hired by Lexington.  The two actions have been consolidated.

Plaintiffs assert that Lexington failed to comply with the terms of the homeowners' association's insurance policy by failing to properly adjust Plaintiffs' claims for property damage claims resulting from the water leak.  Plaintiffs also assert claims for punitive damages against Lexington and York.  Lexington now moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  The court grants the motion on the ground that Plaintiffs do not have standing to enforce the association's policy.

II.        RULE 12(c) STANDARD.

Rule 12(c) permits parties to move for judgment on the pleadings.  It states: "After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  The standard governing a Rule 12(c) motion for judgment on the pleadings is "functionally

2

identical" to that governing a Rule 12(b)(6) motion. <u>United States ex rel. Caffaso v. Gen. Dynamics C4 Sys., Inc.</u>, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011). For a Rule 12(c) motion, the allegations of the nonmoving party are accepted as true, while the allegations of the moving party that have been denied are assumed to be false. <u>See</u> <u>Hal Roach Studios v. Richard Feiner & Co., Inc.</u>, 896 F.2d 1542, 1550 (9th Cir. 1989). A court evaluating a Rule 12(c) motion must construe factual allegations in a complaint in the light most favorable to the nonmoving party. <u>Fleming v. Pickard</u>, 581 F.3d 922, 925 (9th Cir. 2009). "Judgment on the pleadings under Rule 12(c) is proper when the moving party establishes on the face of the pleadings that there is no material issue of fact and that the moving party is entitled to judgment as a matter of law." <u>Jensen Family Farms, Inc. v. Monterey Bay Unified Air Pollution Control Dist.</u>, 644 F.3d 934, 937 n.1 (9th Cir. 2011).

Generally, when matters outside the pleadings are considered, a motion for judgment on the pleadings must be construed as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. <u>See</u> Fed. R. Civ. P. 12(d). Courts have held, however, that when adjudicating a Rule 12(c) motion, courts may consider matters subject to judicial notice without converting the motion into one for summary judgment. <u>See</u> <u>Heliotrope Gen., Inc. v. Ford Motor Co.</u>, 189 F.3d 971, 981 n.18

(9th Cir. 1999) ("When considering a motion for judgment on the pleadings, this court may consider facts that are contained in materials of which the court may take judicial notice." (quotation marks omitted)); accord Lacondequy v. Adapa, 2011 WL 9572, at *2 (E.D. Cal. Jan. 3, 2011); Williams v. City of Antioch, 2010 WL 3632199, at *2 (N.D. Cal. Sept. 2, 2010). A court may also consider certain documents attached to a complaint, as well as documents incorporated by reference into a complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." United States v. Ritchie, 342 F.3d 903, 909 (9th Cir. 2003). According to the Ninth Circuit, incorporation by reference is appropriate when "a plaintiff's claim about insurance coverage is based on the contents of a coverage plan." Id. (citations omitted).

III.     BACKGROUND.

Plaintiffs Michael Peters and Linda Peters jointly own a condominium at the Wavecrest Resort in Kaunakakai, on the island of Molokai. Defs. Lexington Insurance Company and York Risk Services Group, Inc.'s Notice of Removal Ex. A. ("Peters Complaint") ¶ 1, ECF No. 1. Plaintiffs Jerry Chernik and Kris Chernik also jointly own a unit at the Wavecrest Resort. Defs. Lexington Insurance Company and York Risk Services Group, Inc.'s Notice of Removal Ex. A. ("Chernik Complaint") ¶ 1, Civil No. 11-00356, ECF No. 1. On December 3, 2009, water leaking from

4

another unit damaged Plaintiffs' units.  Peters Complaint and Chernik Complaint (collectively, the "Complaints") ¶ 4.

At the time of the leak, Defendant Lexington insured Wavecrest Resort pursuant to an insurance policy taken out and maintained by the Wavecrest Resort's Association of Apartment Owners ("AOAO").  Id. ¶ 2.  Plaintiffs allege that they were covered under the AOAO's insurance policy.  Id. ¶ 3.  After the leak, they "timely" filed claims with Lexington "under the terms of the Policy."  Id. ¶ 5.  It appears from the Complaints that Michael and Linda Peters demanded $65,323.54 in damages, and Jerry and Kris Chernik demanded $89.519.77 in damages.  Id. ¶ 9.  Lexington hired Defendant York to adjust the claims.  Id. ¶ 6.

On April 13, 2011, the Peters Plaintiffs and the Chernik Plaintiffs filed the lawsuits now consolidated before this court.  Originally filed in state court, the nearly identical Complaints allege that Lexington and York failed to adequately adjust Plaintiffs' claims pursuant to the Policy and Hawaii law.  The Complaints assert three causes of action:  Count I--"Breach of the Insurance Agreement by Lexington," Count II--"Punitive Damages Against Lexington," and Count III--"Punitive Damages Against York."  Id. at 3-4.  The AOAO is not named as a party, and Plaintiffs do not contend that they are suing on behalf of the AOAO.

On June 3, 2011, Defendants removed the cases to federal court. ECF No. 1. Defendants answered the Complaints on June 15, 2011. ECF No. 7. On August 2, 2011, the parties agreed to consolidate the cases. ECF. No. 15.

On August 22, 2011, Lexington moved for judgment on the pleadings against all Plaintiffs with respect to Counts I and II. Def. Lexington Insurance Company's Mot. for J. on the Pleadings ("Motion"), ECF No. 17. Plaintiffs jointly filed an opposition on November 21, 2011.[1] Pls. Memo. in Opp'n to Def. Lexington Insurance Company's Mot. for J. on the Pleadings ("Opposition"), ECF No. 20. Defendants filed a reply on November 23, 2011.

IV.     ANALYSIS.

    A.     General Law Governing Insurance Contracts.

Federal courts sitting in diversity apply state substantive law and federal procedural law. See Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC, 632 F.3d 1056, 1060 (9th Cir. 2011) ("When a district court sits in diversity, or hears state law claims based on supplemental jurisdiction, the court applies state substantive law to the state law claims."); Zamani v. Carnes, 491 F.3d 990, 995 (9th Cir. 2007) ("Federal courts

---

[1] The court notes that Plaintiffs filed their opposition in violation of Local Rule 7.4, as it was filed only fourteen days before the hearing. Rule 7.4 requires that an opposition be filed not less than twenty-one days prior to the date of a hearing. While the court has considered Plaintiffs' opposition, the court cautions Plaintiffs that untimely filings may be disregarded or stricken from the record.

sitting in diversity jurisdiction apply state substantive law and federal procedural law." (quotation marks omitted)).  When interpreting state law, a federal court is bound by the decisions of a state's highest court.  <u>Trishan Air, Inc. v. Fed. Ins. Co.</u>, 635 F.3d 422, 427 (9th Cir. 2011).  In the absence of a governing state decision, a federal court attempts to predict how the highest state court would decide the issue, using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance.  <u>Id.</u>  See also <u>Burlington Ins. Co. v. Oceanic Design & Constr., Inc.</u>, 383 F.3d 940, 944 (9th Cir. 2004) ("To the extent this case raises issues of first impression, our court, sitting in diversity, must use its best judgment to predict how the Hawaii Supreme Court would decide the issue." (quotation marks and brackets omitted)).

Under Hawaii law, general rules of contract construction apply to the interpretation of insurance contracts. <u>Guajardo v. AIG Haw. Ins. Co.</u>, 118 Haw. 196, 203 (2008); <u>Dawes v. First Ins. Co. of Haw.</u>, 77 Haw. 117, 121 (1994).  Hawaii law requires that an insurance policy be read as a whole and its terms construed in accordance with their plain, ordinary, and accepted sense in common speech, unless it appears that a different meaning is intended.  <u>Guajardo</u>, 118 Haw. at 203; <u>Dawes</u>, 77 Haw. at 121; <u>First Ins. Co. of Haw. v. State</u>, 66 Haw. 413, 423 (1983); <u>see also</u> Haw. Rev. Stat. § 431:10-237 ("Every insurance

contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, restricted, or modified by any rider, endorsement or application attached to and made a part of the policy."). Plaintiffs have attached a copy of the insurance policy in issue to their opposition. Opposition Ex. A ("Policy"), ECF. No. 20-1. The parties do not dispute its authenticity. As Plaintiffs' claims are based on the Policy, the court considers its terms.

      B.    <u>Count I is a Breach of Contract Claim.</u>

Lexington, contending that Count I is unclear, construes Count I as either a breach of contract claim or a third-party bad faith claim. Lexington argues that judgment on the pleadings is appropriate in either event.

The court construes Count I as claiming a breach of the Policy between Lexington and the AOAO. Count I is labeled "Breach of the Insurance Agreement," and it alleges that "Lexington has breached the terms of the insurance agreement by failure to properly adjust the Plaintiffs' claim in violation of the terms of its policy." Complaints ¶ 10-11. Plaintiffs' opposition also implies that Count I is a breach of contract claim by arguing that Plaintiffs have standing to assert a "first party action against an insurance carrier." Opposition at 4.

The court therefore does not reach the merits of the purported third-party bad faith claim.

> C.  Plaintiffs Lack Standing to Assert Breach of Contract Based on the AOAO's Insurance Policy.

Article III, section 2, of the United States Constitution sets forth constitutional limits on a court's subject-matter jurisdiction; it confines federal courts to deciding cases or controversies. No case or controversy exists when a plaintiff lacks standing to make the claims asserted. Cetacean Cmty. v. Bush, 386 F.3d 1169, 1174 (9th Cir. 2004). A federal court therefore does not have subject-matter jurisdiction over a suit by a plaintiff who lacks standing. Id.

A plaintiff bears the burden of establishing its standing to sue. To do so, a plaintiff must demonstrate three things: (1) the plaintiff suffers an actual or threatened injury; 2) the injury is fairly traceable to the challenged action; and (3) the injury is likely to be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Plaintiffs do not meet this burden.

A breach of contract claim generally requires that the parties be in privity of contract. See Hunt v. First Ins. Co. of Haw., Ltd., 82 Haw. 363, 367 (App. 1996). Lexington argues that Plaintiffs lack standing to assert a breach of the insurance agreement in issue because there is no privity of contract between Lexington and the Peters Plaintiffs or the Chernik

9

Plaintiffs. As the policy insured only the AOAO and not the individual unit owners, the court agrees with Lexington.

Although the court is unaware of controlling authority addressing whether homeowners may sue to enforce their homeowners' association's insurance policy, a California court of appeals held in an analogous case that "individual members of a homeowners association in a planned residential development have no standing to maintain an action against insurance companies on policies purchased by and issued to the homeowners association managing the development and under which plaintiffs are not insureds." Gantman v. United Pacific Ins. Co., 284 Cal. Rptr. 188, 189 (Cal. Ct. App. 1991). In Gantman, the plaintiffs owned a home in a residential development that had been damaged by a water leak in the roof. Id. at 190-91. The plaintiffs sued the defendant insurance companies to recover damages based on their homeowners' association's insurance policies. Id. at 191. The California court held that the individual members of the association did not have standing because they were neither parties to the insurance contract between the homeowners' association and the insurance companies, nor insureds or express beneficiaries under the terms of the policy whose benefits were allegedly being wrongfully withheld. Id. at 192-93.

Plaintiffs similarly are neither parties to Lexington and the AOAO's insurance contract, nor insureds or express

beneficiaries under the Policy.  The Complaints allege that the "[P]laintiffs were covered under [the insurance] policy as members of the Plaintiffs' AOAO."  Complaints ¶ 2.  This is a legal conclusion that the court is not required to accept as true.  See, e.g., Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009) ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation'" (quoting Bell Atlantic Corp. v Twombly, 550 U.S. 544, 555 (2007)).  The Policy actually names "Wavecrest Resort, AOAO" as the insured, not the individual unit owners.  Policy at 2.  Plaintiffs do not point to anything in the Policy stating that they are additional insureds.

Plaintiffs contend that "they do not have to be named insureds to be covered under the subject policy of insurance." Opposition at 2.  They make two arguments in this regard.

First, they argue that although they are not expressly named as insureds, section A.1.a.(6) of the Policy establishes that they are in fact insureds.  This argument is unpersuasive.  Section A.1.a.(6) is a term that was added to the main body of the Policy.  Policy at 56.  Section A of the Policy pertains to coverage.  It states that Lexington "will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause

11

of Loss." Id. at 14. "Covered Property" is defined as "the type of property described in this Section A.1., and limited in A.2." Id. Section A.1 includes: "a. Building, meaning the building or structure described in the Declarations," with subsections (1)-(5). Id.

In a "Condominium Association Changes" rider to the Policy, section A.1.a ("Building") was supplemented with subsection (6), which expanded the definition of "Covered Property" to include:

> (6) Any of the following types of property contained within a unit, regardless of ownership, if your Condominium Association Agreement requires you to insure it:
>
>     (a) Fixtures, improvements and alterations that are a part of the building or structure; and
>
>     (b) Appliances, such as those used for refrigerating, ventilating, cooking, dishwashing, laundering, security, or housekeeping.

Id. at 56.

Section A.1.a.(6) does not give Plaintiffs standing to sue. It states only that the Policy covers some property in the individual units if the Condominium Association Agreement requires the AOAO to provide such insurance. The provision does not state that the individual unit owners thereby become insureds who may bring claims against Lexington on their own. That is, even if section A.1.a.(6) expands what Lexington covers for the

12

AOAO, it does not necessarily follow that Michael and Linda Peters or Jerry and Kris Chernik may themselves enforce the Policy.

Plaintiffs' second argument is that section A.1.a.(6) gives them standing to enforce the AOAO's Policy because it incorporates Hawaii Revised Statutes § 514B-143(b). According to Plaintiffs, section 514B-143(b) creates a private right of action. Section 514B-143(b) states in relevant part:

> If a building contains attached units, the insurance maintained under subsection (a)(1), to the extent reasonably available, shall include the units, the limited common elements, except as otherwise determined by the board, and the common elements. The insurance need not cover improvements and betterments to the units installed by unit owners, but if improvements and betterments are covered, any increased cost may be assessed by the association against the units affected.

Subsection (a)(1), referred to in section 514B-143(b), requires, among other things, that a homeowners' association maintain property insurance for the common areas. Haw. Rev. Stat. § 514B-143(a)(1).

While section 514B-143(b) does indeed state that a homeowners' association shall insure individual units, the statute is silent on the point of whether the owner of an individual unit may bring an action directly against the insurer to enforce an association's policy. Plaintiffs do not provide any authority, such as legislative history or case law,

13

interpreting section 514B-143(b) as giving a unit owner a right of action.

Hawaii state courts apply three factors to determine whether "a private remedy is implicit in a statute not expressly providing one," as set forth by the United States Supreme Court in Cort v. Ash, 422 U.S. 66 (1975):

> First, is the plaintiff 'one of the class for whose especial benefit the statute was enacted['] . . . -that is, does the statute create a . . . right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?

County of Haw. v. Ala Loop Homeowners, 123 Haw. 391, 407 (2010) (quoting Pono v. Molokai Ranch, Ltd, 119 Haw. 164, 185 (Haw. App. 2008) (citations omitted), abrogated on other grounds by Ala Loop, 123 Haw. at 408)). Hawaii courts recognize that "legislative intent appears to be the determinative factor." Id.

Plaintiffs fail to meet at least two of the factors.[2] With regard to the first factor, because section 514B-143(b)

---

[2] Plaintiffs may satisfy the third factor. The stated purpose of chapter 514B is to "update, clarify, organize, deregulate, and provide for consistency and ease of use of the condominium property regimes law." S.B. 2210, 22nd Leg., 2004 (Haw. 2004). Reading section 514B-143(b) as providing Plaintiffs with a private remedy against Lexington does not appear inconsistent with that purpose.

states that the AOAO's insurance "shall include the units," it appears that Plaintiffs would benefit from the statute; however, it is not clear that section 514B-143(b) was enacted to provide "especial" benefit to, or a right in favor of, the unit owners. See Rees v. Carlisle, 113 Haw. 446, 459 (2007) (holding that taxpayers who attempted to enforce an ordinance that provided "standards of conduct" for public officers did not meet the first factor because "[a]lthough the public clearly benefits from the existence of such standards, it does not appear that the ordinance was passed for the special benefit of tax payers as a group" (citations omitted)). It may be that the legislature meant to benefit the AOAO, as problems with individual units could affect the building as a whole, or as eliminating ambiguities in coverage could assist the AOAO's administration of the building.

More significantly, Plaintiffs do not establish the determinative second factor, that the Hawaii legislature intended to create a right of action for unit owners to enforce their AOAO's policy. At the hearing on this motion, Plaintiffs argued that the Hawaii legislature's intent to create a private right of action under section 514B-143(b) is clear when that section is read in conjunction with section 514B-143(f). Section 514B-143(f) provides that an insurer is to pay the homeowners'

association when making payments under an association's policy for damage to the common areas:

> Any loss covered by the property policy under subsection (a)(1) shall be adjusted by and with the association. The insurance proceeds for that loss shall be payable to the association, or to an insurance trustee designated by the association for that purpose. The insurance trustee or the association shall hold any insurance proceeds in trust for unit owners and secured parties as their interests may appear.

Plaintiffs concede that section 514B-143(f) requires Lexington to adjust claims with the AOAO, but argue that section 514B-143(f) applies only to the property the AOAO is required to insure under section 514B-143(a)(1)--the common areas--and not to property insured pursuant to section 514B-143(b), which addresses the individual units.

The gist of Plaintiffs' argument is that it makes sense for only a homeowners' association to recover insurance benefits under section 514B-143(a)(1) because that provision applies to common areas, which the association must maintain or repair. Plaintiffs argue that, by contrast, unit owners bear the cost of repairing their own units, so the legislature would not have similarly restricted rights of action relating to the units to the AOAO. In other words, Plaintiffs argue that the Hawaii legislature intended to allow an AOAO's insurer to adjust a claim for loss to an individual unit not only with the AOAO, but also with that unit's owner. Plaintiffs further contend that, in

implicitly providing for an AOAO's insurer to adjust claims with unit owners under section 514B-143(b), that statute must also permit unit owners to sue to enforce an AOAO's policy under section 514B-143(b).  Otherwise, Plaintiffs contend, they would be unable to recover at all for damage to their units.

The court is not persuaded that, by explicitly mentioning section 514B-143(a)(1) while remaining silent as to section 514B-143(b) in section 514B-143(f), the legislature was giving a unit owner a private right of action under section 514B-143(b).  It could just as easily be said that the legislature's failure to mention any direct action by a unit owner indicates an intent not to permit such an action at all.

Plaintiffs are not left without a remedy even if they cannot sue Lexington themselves.  If Plaintiffs believe that the AOAO has not been vigorous enough in its dealings with Lexington, Plaintiffs' dispute may well be with the AOAO.

Absent status as insureds under the Policy or some other source providing a right to sue the AOAO's insurer, Plaintiffs may not proceed with their claims against Lexington.

V.      CONCLUSION.

The court GRANTS Lexington's motion for judgment on the pleadings.

17

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, December 27, 2011.



    /s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Peters v. Lexington Ins. Co.; Civil No. 11-00355 SOM-RLP; ORDER GRANTING DEFENDANT LEXINGTON INSURANCE COMPANY'S MOTION FOR JUDGMENT ON THE PLEADINGS